IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs Oct. 6, 2008

## RICHARD V. FULLER, ET AL. v. JOHN DENNIE CRABTREE, JR., M.D.

Appeal from the Circuit Court for Coffee County
No. 32,579    L. Craig Johnson, Judge

No. M2008-01227-COA-R9-CV - Filed April 16, 2009

A doctor who earlier submitted an affidavit in this medical malpractice action and who also participated in the peer review process at the defendant doctor's hospital entered an appearance as plaintiffs' counsel. The trial court declined the defendant doctor's request to have the physician/attorney disqualified as plaintiffs' counsel. After considering the issue on interlocutory appeal, we reverse and find that the physician/attorney is disqualified and may not represent plaintiffs.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Arthur P. Brock, H. Dean Clements, Carl Eugene Shiles, Jr., Chattanooga, Tennessee, for the appellant, John Dennie Crabtree, Jr., M.D.

Ralph M. Bard, Jason Ryan Reeves, Tullahoma, Tennessee, for the appellees, Richard V. Fuller and MaryAnn Fuller.

## OPINION

The issue on interlocutory appeal is whether a doctor whose affidavit plaintiffs filed in opposition to summary judgment in this medical malpractice action and who participated in a peer review system at the hospital where the defendant doctor practiced can also represent the plaintiffs as their attorney. The trial court declined to disqualify the physician/attorney and we granted an interlocutory appeal to consider the issue.

In 2003, Richard and Mary Ann Fuller sued Dr. John Crabtree[1] for medical malpractice relating to injuries Mr. Fuller allegedly sustained after colon surgery and treatment in February and March of 2002. During the course of the lawsuit, Dr. Crabtree filed a motion for summary judgment supported by his affidavit. The Fullers filed the affidavit of Dr. Ralph Bard in opposition to the summary judgment motion in December of 2003. Dr. Bard had practiced at Harton Regional Medical Center ("Hospital") where Dr. Crabtree also practiced.

Dr. Bard's affidavit is wide ranging. It attacks Dr. Crabtree's honesty, skill, judgment and career history and states that Dr. Crabtree's inadequacies are well known in the Hospital community. Dr. Bard said that he was aware of statements by Dr. Crabtree that contradict Dr. Crabtree's affidavit. Dr. Bard states that Dr. Crabtree misrepresented reasons for surgery, substantially breached the standard of care, performed unnecessary surgery, and committed fraud and battery. Dr. Bard's affidavit gives a history of Dr. Crabtree's career which is quite derogatory culminating in the statement that "Dr. Crabtree's lack of surgical knowledge is well known in Harton Regional Medical Center though it would not be freely admitted." Dr. Bard's affidavit then attributes Dr. Crabtree's continued practice to protection by the Hospital, his partners, and "a complete hijacking of the peer review system." Dr. Bard's affidavit goes beyond an expert's affidavit providing an expert opinion about the standard of care issues in the current dispute. It also presents statements about Dr. Crabtree's career, his aptitude and his relationships with the Hospital and other doctors based on Dr. Bard's personal knowledge.

Dr. Bard's affidavit was filed to oppose the defendant's motion for summary judgment and was relied upon by plaintiffs in their Response to Dr. Crabtree's Statement of Fact.

Thereafter, on June 6, 2005, the plaintiffs filed a Motion to Amend their complaint which was submitted by their existing attorney, Jason Reeves, and by Dr. Bard, as co-counsel. In addition to being a medical doctor, Dr. Bard is also an attorney. The Motion to Amend, which was subsequently granted, expressly relied upon and incorporated "all of the affidavits" previously filed. Consequently, Dr. Bard's affidavit was also used to support the Motion to Amend filed by Dr. Bard on behalf of the plaintiffs.

In May of 2006, Dr. Crabtree filed a motion to disqualify Dr. Bard from representing the plaintiffs based on conflict of interest, on Dr. Bard's participation in the Hospital peer review process, and on the appearance of impropriety.

The trial court denied Dr. Crabtree's motion to disqualify Dr. Bard from representing the plaintiffs on December 18, 2006. Dr. Crabtree then filed a motion under Rule 9 requesting permission to file an interlocutory appeal on January 11, 2007. The appeal request was initially denied by the trial court but upon reconsideration, after a hearing, was granted on May 30, 2008.

---

[1]The Fullers' suit initially included several other defendants who have been dismissed.

In its order granting permission to request an interlocutory appeal, the trial court found the defendant "has made colorable arguments in favor of disqualification" noting that Dr. Bard "who currently serves as counsel of record for plaintiffs in this cause previously filed an affidavit as an expert standard of care witness for plaintiffs . . . and formerly practiced medicine with the defendant, Dr. Crabtree." Concurring with the trial court, this Court granted Dr. Crabtree's request for an interlocutory appeal on July 2, 2008.

## ANALYSIS

Among the grounds raised by Dr. Crabtree on appeal to disqualify Dr. Bard is Rule 3.7 of the Tennessee Rules of Professional Conduct, "Lawyer as a Witness." In the proceedings below, the ground that captured the most attention focused on whether Dr. Bard's participation in the hospital's peer review process and the confidential nature of that process disqualified him from representing the Fullers. While Rule 3.7 was not prominent in the pleadings filed by Dr. Crabtree below,[2] the trial court clearly was making reference to it when it granted Dr. Crabtree's request to pursue an interlocutory appeal. Furthermore, plaintiffs made no objection to Dr. Crabtree raising this ground on appeal. Consequently, we conclude that the parties were aware of this issue in the proceedings below.

Rule 3.7[3] provides as follows:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

The facts of this case do not indicate the existence of any of the exceptions in the rule. We need not spend excessive time deciding whether Dr. Bard will become a "necessary witness," as described above, because the fact is that Dr. Bard has already become a witness. His affidavit was filed in opposition to the summary judgment motion and was successfully relied upon again in plaintiffs' motion to amend their complaint. While his affidavit has been characterized as being

---

[2] It does not appear that Dr. Crabtree expressly cited Rule 3.7 in the pleading filed about the disqualification.

[3] This rule became effective on March 1, 2003, before Dr. Bard participated in this case as the Fullers' legal counsel.

"withdrawn," plaintiffs have proffered no other affidavit or other proof opposing Dr. Crabtree's motion for summary judgment. Thus, his affidavit was necessary to oppose Dr. Crabtree's motion.

In addition to the fact that Dr. Bard has already acted as a fact and expert witness, we must find that it is likely that Dr. Bard will be a necessary witness in the future for any number of reasons. First, according to his own affidavit, he is a necessary witness for plaintiffs. According to Dr. Bard's affidavit, it is widely known at the Hospital that Dr. Crabtree is incompetent yet this incompetence is covered up by the Hospital staff and its peer review committee. Dr. Bard's affidavit characterizes himself as the lone voice giving evidence to Dr. Crabtree's incompetence. In effect, Dr. Bard's affidavit describes himself as a necessary witness for plaintiffs. Yet, by acting as plaintiffs' counsel, Dr. Bard would silence this sole source of evidence. This is, of course, plaintiffs' prerogative, but other reasons also support disqualification.

Second, factual statements made by Dr. Bard of his own personal knowledge in his affidavit also make Dr. Bard a witness. Dr. Bard's allusions to undisclosed facts in his affidavit necessitate discovery about his knowledge. As discussed earlier, Dr. Bard's affidavit goes far beyond expert matters. For example, particularly relevant here is Dr. Bard's statement that he has knowledge of problems with Dr. Crabtree's credibility, specifically concerning the affidavit filed in this case by Dr. Crabtree. Obviously, Dr. Crabtree will need to discover what plaintiffs maintain are inaccuracies in Dr. Crabtree's affidavit. The obvious way to do this is to depose Dr. Bard. Consequently, the statements of fact made by Dr. Bard in his affidavit have made him a witness.

Third, the fact that Dr. Bard participated in the peer review process raises fact questions separate and apart from any questions about admissibility of those proceedings. Dr. Bard agrees that anything he learned in the peer review process about Dr. Crabtree is confidential under the Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219. According to Dr. Bard, the information in his affidavit and "all information and materials" used by Dr. Bard in his representation of the Fullers "was obtained from sources outside the peer review process." Consequently, Dr. Bard argues his participation in the peer review process is irrelevant. It is difficult to imagine that Dr. Crabtree's counsel will forego the deposition of Dr. Bard to explore this declaration.

Finally, Dr. Bard, both as a witness and officer of the court, cannot submit an affidavit for one purpose yet expect the court to ignore it when it does not suit another purpose. Here, Dr. Bard injected himself as a fact witness about Dr. Crabtree and his career. That is exactly the situation Rule 3.7 prohibits.

Based on this record, it is hard to find that Mr. Bard's disqualification as their attorney creates a substantial hardship for the Fullers. The Fullers have been represented in the past by Mr. Reeves.

The trial court is reversed.  We find that Mr. Bard is disqualified from acting as the Fullers' counsel.  Cost of appeal are taxed against appellees, Mr. and Mrs. Fuller, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, P.J., M.S.